**UNITED STATES of America**

v.

**Patsy ALEXANDER, Jr., Walter Suba, Nathan Volpe.**

Crim. No. 62-231.

United States District Court
W. D. Pennsylvania.

May 28, 1963.

---

1. Pennsylvania law applies because the decedent was a resident of Pennsylvania.

Samuel J. Reich, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Hubert Teitelbaum, Pittsburgh, Pa., for defendant, Patsy Alexander, Jr.

Paul Beck, John R. Gavin, Pittsburgh, Pa., for defendant, Nathan Volpe.

MARSH, District Judge.

Defendants, Patsy Alexander, Jr., Nathan Volpe, and Walter Suba, have been indicted for conspiring to defraud the United States and for attempting to bribe a person acting in behalf of the United States in the care, custody and control of United States Food Stamps. This case concerns the operation by the United States and the Commonwealth of Pennsylvania of a program to distribute United States Food Stamps to needy persons in Fayette County, Pennsylvania.

The defendants, Alexander and Volpe, have moved to suppress testimony relating to certain telephone conversations, recording of said telephone conversations, and all evidence obtained as a result of said telephone conversations.

In our opinion the motion to suppress should be denied.

All the telephone conversations involved took place during a period from July 27, 1962, to August 3, 1962, and were between Anthony C. Collins, an employee of the Pennsylvania Department of Welfare, and one or more of the defendants.

Some of the telephone calls were made initially by Collins; other telephone calls were made initially by the defendants to Collins. All the telephone conversations took place while Collins was in his home in New Salem, Pennsylvania, a town near Uniontown in Fayette County, Pennsylvania.

Counsel have stipulated that each of the telephone conversations involved persons in the State of Pennsylvania at the time of the conversation.

Collins and each of the defendants live in the vicinity of Uniontown, Pennsylvania. All the telephone calls were intrastate.

On or about July 26, 1962, a special agent of the Federal Bureau of Investigation connected an extension wire from

the lightning arrestor block of the telephone line on the inside of Collins' house to an amplifier which was connected to a recording device in the basement for the purpose of recording incoming and outgoing telephone conversations from a telephone on the first floor.

The recording device was operated by agents of the Federal Bureau of Investigation. The connection was not made with the consent of or through equipment furnished, installed and maintained by the Bell Telephone Company. The telephone line to which the recorder was attached was connected with the exchange and toll system of the Bell Telephone Company, which system was used to carry telephone messages in interstate and foreign toll service.

The recording device did not contain an automatic tone warning which would produce a distinct signal repeated at regular intervals in the course of the conversations for the purpose of providing notice to the parties that their telephone conversations were being recorded.[1]

By use of the recording device without warning signal, telephone conversations with Collins in his home were recorded without notice to the other parties to the conversations, including defendants, Alexander and Volpe.

The connection between the recording device and the telephone line was made with the consent of Collins; he gave permission to agents to listen in and record the telephone conversations between him and the defendants.

During the larger part of conversations Collins had with Alexander and Volpe, a special agent of the Federal Bureau of Investigation listened to same simultaneously with Collins, by listening at the telephone receiver on the first floor; some parts of the conversations were listened to by an agent through the external earphones of the amplifier.

Neither Collins nor any of the agents made any notes of said conversations.

Generally, the recordings were played back, within a few hours after their recording, to the agents and Collins. They are not now able to distinguish, as to present knowledge, that part heard by simultaneous listening to the telephone conversations and that heard from the recordings. Some of the recordings were played back and interpreted by Collins in discussion with the agents and discussed in the course of the investigation.

After each telephone conversation with the defendants, an agent would give his superior a synopsis of said conversation. Most of the synopses were made without the aid of the recording. At that time the agent who listened in on the conversations had an independent recollection of the matters he heard discussed during the telephone conversations without having to rely on the recordings.

The purpose the agents had in recording these conversations was for use as an investigative aid and to preserve reliable evidence of what was said.

Transcripts of the recordings were made for the purpose of transmission to the officials of the Federal Bureau of Investigation in Washington, D. C., and elsewhere, and to the United States Attorney for their use in making decisions and evaluating the Government's case for prosecution purposes.

Largely because of the overheard conversations, the defendants were arrested on August 3, 1962.

██ None of the defendants' constitutional rights have been violated. Cf. Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942). Since the agents, with the authority and con-

---

1. The required signal is described in Federal Communications Commission Order at Docket No. 6787, dated November 26, 1947, as modified on May 20, 1948, effective June 30, 1948, and Pennsylvania Public Utilities Commission Regulation at Local General Tariff, P.U.C. Commission No. 1, Section 26, Sheets 19 and 20.

sent of Collins, intercepted the conversations by listening at the telephone receiver and recording them on the extension, § 605 of the Communications Act of 1934, 47 U.S.C.A., was not violated. Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); Ladrey v. Commission on Licensure To Practice, etc., 104 U.S.App.D.C. 239, 261 F.2d 68 (D.C.Cir.1958); Carnes v. United States, 295 F.2d 598 (5th Cir. 1962); Ferguson v. United States, 307 F.2d 787 (10th Cir. 1962).[2]

█ It is clear that a violation by the federal agents of state regulations relating to recording telephone conversations does not provide a basis for suppression of evidence in a federal criminal trial. Olmstead v. United States, supra, 277 U.S. at pp. 468–469, 48 S.Ct. at p. 569; On Lee v. United States, 343 U.S. 747, 754–755, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

█ The defendants strenuously contend that the evidence should be suppressed because obtained in violation of certain regulations of the Federal Communications Commission.[3] These regulations do not have any legal effect on the intrastate conversations overheard and recorded in this case. Moreover, it has been held that since the regulations are directed to carriers over whom the Federal Communications Commission has jurisdiction, they "cannot be viewed as creating a new crime prohibited to the citizenry nor as changing the rules of evidence evolved in the federal courts." Ferguson v. United States, supra, 307 F.2d at p. 790; Harris v. United States, 310 F.2d 934 (10th Cir. 1962). In view of these authorities, we do not think that the Federal Communications Commission regulations provide a basis

for suppressing the recordings as evidence.

In Rathbun v. United States, supra, it was held that one party to a telephone conversation may permit a third person to overhear the conversation without notice to the other party. The additional process of recording the overheard conversation is a distinction to be sure, but only a distinction in degree, not in substance; it simply assumes that a more complete and more exact record of what was said will be available than a subsequent report based on recollection or notes. See: Carnes v. United States, supra.

The process of discovering truth at trial ought to be restricted "only upon the basis of considerations which outweigh the general need for untrammeled disclosure of competent and relevant evidence in a court of justice." Elkins v. United States, 364 U.S. 206, 216, 80 S.Ct. 1437, 1443, 4 L.Ed.2d 1669 (1960). No act of Congress has imposed any limitations on the use of authorized recordings of telephone conversations in a trial. It is our opinion that the considerations advanced by defendants are not of sufficient weight to require the suppression of the recordings as evidence. Cf. Olmstead v. United States, supra, 277 U.S. at pp. 468–469, 48 S.Ct. at p. 569; United States v. Thomas, 303 F.2d 561, 563 (6th Cir. 1962) (cases collected).

## CONCLUSIONS OF LAW

1. This court has jurisdiction to hold a pretrial hearing to determine if any evidence has been obtained in an illegal manner requiring suppression.

2. The procedures employed by the federal agents in recording the telephone

---

2. At oral argument counsel for defendants stated that this was not a wire tap case under § 605; "this was a recording without a beep * * *" (T., p. 4); "I do not think Section 605 is in the picture * * *; I feel that consent by one party is sufficient under 605, whether they fastened it to the plates or whether

they listened to it on the phone." (T., p. 123). We agree with counsel's oral statements.

3. In the Matter of Use of Recording Devices in Connection With Telephone Service, Docket No. 6787, 11 F.C.C. 1033, 12 F.C.C. 1005, 12 F.C.C. 1008.

conversations in question did not violate any constitutional rights of the defendants under the Fourth and Fifth Amendments of the United States Constitution.

3. The procedures employed by the federal agents in recording the telephone conversations in question did not violate § 605 of Title 47 U.S.C.A.

4. Whatever Pennsylvania law may be regarding the recording of telephone conversations, such law does not affect the admission or suppression of evidence in a federal criminal trial.

5. The regulations of the Federal Communications Commission regarding the recording of telephone messages are inapplicable because those regulations apply only to interstate or foreign telephone conversations and not to intrastate telephone conversations as are here involved.

6. The recordings of the telephone conversations should not be suppressed as evidence in a federal criminal trial.

7. The motion of the defendants to suppress evidence should be denied.